UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FUNAI ELECTRIC CO., LTD., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>LSI CORPORATION, et al.,<br><br>Defendants. | Case No.  16-cv-01210-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Re:  ECF 48] |

Plaintiffs Funai Electric Company Ltd., Funai Corporation, Inc., Funai Service Corporation, and P&F USA, Inc. (collectively, "Funai") claim that Defendants LSI Corporation ("LSI"), Agere Systems LLC ("Agere"), and Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago") lied to two different standard setting organizations ("SSOs") as part of a scheme to monopolize the markets for certain technologies.  Defendants represented that if their technologies were incorporated into standards for wireless Internet connectivity and video compression, they would license any standard essential patents on fair, reasonable, and non-discriminatory ("FRAND") terms.  Funai contends that Defendants had no intention of honoring that commitment and, in fact, not only refused to offer Funai FRAND licenses to three patents Defendants have asserted are standard essential, but also sued Funai for infringement of those patents.  Funai has responded by suing Defendants under the Sherman Act and state law.

Defendants move to dismiss a number of claims asserted in Funai's operative first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

United States District Court<br>Northern District of California

## I.   BACKGROUND[1]

According to Funai, Defendants' scheme to monopolize began with their misrepresentations to two SSOs:  the Institute of Electrical Electronics Engineers ("IEEE"), which developed what is now a widely practiced standard for wireless Internet connectivity known as "WLAN," "Wi-Fi," or "802.11"; and the International Telecommunications Union ("ITU"), which worked with the International Organization for Standardization and the International Electrotechnical Commission ("ISO/IEC") Moving Picture Experts Group ("MPEG") to develop what is now a widely practiced standard for video compression known as "H.264," "MPEG-4 Part 10," or "AVC."  FAC ¶¶ 26, 30-32, 126, ECF 40.

Defendants' Misrepresentations to the IEEE (802.11 Standard)

The IEEE released the initial 802.11 protocol for wireless Internet connectivity, "legacy 802.11," in 1997.  FAC ¶ 29.  A number of amendments were released over the next fifteen years, culminating in the release of the "802.11" standard in 2012.  *Id.*  During this period, the IEEE had a policy governing intellectual property rights ("IPR policy") which might affect a standard under consideration.  *Id.* ¶¶ 33-36, 44-46.  That policy required those involved in a standard's development to disclose ownership of any patent or patent application that might be essential to the standard.  *Id.* ¶ 33.  Upon such disclosure, the IEEE requested Letters of Assurance stating either that the patentee would not enforce such patents against those implementing the standard or that the patentee would license such patents without compensation or on FRAND terms.  *Id.* ¶ 34. If Letters of Assurance were not provided, the IEEE would revise the standard to incorporate alternative technologies or would discontinue work on the standard altogether.  *Id.* ¶ 36.

In 2003, Defendant Agere and its predecessor in interest, Lucent Technologies, Inc., submitted Letters of Assurance to the IEEE, specifically identifying U.S. Patent Nos. 6,452,958 ('958 patent) and 6,707,867 ('867 patent) as containing one or more claims that may be required to practice the 802.11e and 802.11g standards.  FAC ¶ 38 and Exh. 1.  The Letters of Assurance stated that Agere was "prepared to grant a license to an unrestricted number of applicants on a

---

[1] Plaintiff's factual allegations are accepted as true for purposes of the motion to dismiss.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

United States District Court
Northern District of California

worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard." *Id.* (alteration in original).  Based on those Letters of Assurance, the IEEE released the 802.11 standard and amendments to that standard which Defendants assert incorporated their patented technology.  *Id.* ¶ 39.  Absent Defendants' Letters of Assurance, the IEEE either would have revised the standard to employ alternative technologies instead of Defendants' technologies or would have stopped working on the standard.  *Id.*  In reliance on the IEEE's standard setting process and Defendants' Letters of Assurance promising to license any standard essential patents on FRAND terms, Funai incorporated aspects of the 802.11 family of standards into its products.  *Id.* ¶¶ 42, 61-63.

Defendants' Misrepresentations to the ITU (H.264 Standard)

The ITU and ISO/IEC began developing the current video compression standard's precursor, H.26X, in the 1990s.  FAC ¶ 32.  Several amendments were released over the years, culminating in the release of the H.264 standard.  *Id.*  At the time the H.264 standard was under consideration, the ITU's IPR policy requested disclosure of any patent or patent application that might cover elements of the proposed standard and the licensing of such patents royalty-free or on FRAND terms.  *Id.* ¶ 45.  If a patentee indicated unwillingness to commit to a royalty-free or FRAND license, the ITU could take a number of actions, including revising the standard to remove the potential conflict.  *Id.* ¶ 46.

In 2002, prior to release of the H.264 standard, Defendant Avago's predecessor in interest, VideoLocus, submitted a proposal to the ITU recommending that its technology – which later was disclosed in U.S. Patent No. 6,982,663 ('663 patent)[2] – be incorporated into the standard.  FAC ¶ 48.  Along with the proposal, VideoLocus submitted licensing declarations promising to license its granted, pending, or planned standard essential patents on FRAND terms.  *Id.* ¶¶ 49-50 and Exhs. 2-3.  Based on those licensing declarations, the ITU released the H.264 standard.  *Id.* 51.  Absent the licensing declarations, the ITU either would have revised the standard to employ alternative technologies instead of Defendants' technology or would have stopped working on the standard.

---

[2] The '663 patent issued in January 2006.  FAC ¶ 59.

United States District Court
Northern District of California

1   *Id.* In reliance on the ITU's standard setting process and Defendants' licensing declarations, Funai

2   incorporated aspects of the H.264 standard into its products. *Id.* ¶ 54.

3          <u>Defendants' Commitments to MPEG LA (H.264 Standard)</u>

4          Non-party MPEG LA administers license agreements for pools of patents that are asserted

5   to be essential to certain standards and technologies. FAC ¶ 55. An entity that takes a license for

6   a particular patent pool can manufacture and sell products using any or all of the pooled patents in

7   exchange for the payment of royalties. *Id.* ¶ 56. MPEG LA collects the royalties for the benefit of

8   the various patent holders who contribute to the patent pool as licensors. *Id.*

9          When an entity takes a license to a patent pool, such entity is contractually obligated to

10   grant reciprocal licenses to its own asserted standard essential patents by either (1) directly

11   granting such licenses to other licensees to the patent pool or (2) joining the patent pool as a

12   licensor. *Id.* ¶ 57. A licensee who grants such a reciprocal license either directly or by joining the

13   patent pool receives the same per-patent rate that other licensors receive. *Id.*

14          Among the patent pools administered by MPEG LA is the AVC Patent Portfolio License,

15   relating to the H.264 standard. FAC ¶ 55. Defendant LSI was a licensee to the AVC Patent

16   Portfolio License as early as October 2009 and as recently as December 2015. *Id.* ¶ 58. LSI thus

17   was contractually obligated to grant reciprocal licenses to its asserted standard essential patents to

18   other licensees to the patent pool. *Id.* Funai alleges that LSI has asserted in legal proceedings that

19   the claims of its '663 patent are necessarily infringed by use or implementation of the H.264

20   standard. *Id.* ¶ 59. Because LSI has asserted that the '663 patent is standard essential, LSI had a

21   contractual obligation to grant a reciprocal license to the '663 patent to other licensees to the AVC

22   Patent Portfolio License. *Id.*

23          <u>Defendants' Refusal to Offer FRAND Licenses and Commencement of Litigation</u>

24          Defendants refused to grant Funai a reciprocal license to the '663 patent as required under

25   the terms of the MPEG LA license. FAC ¶¶ 93-94. Defendants likewise refused to grant Funai

26   licenses to the '958, '867, and '663 patents on FRAND terms as required under their commitments

27   to the IEEE and ITU. FAC ¶¶ 64-71, 85-89. Defendants have offered to license the '958, '867,

28   and '663 patents to Funai only upon the conditions that Funai pay exorbitant royalties and take

United States District Court
Northern District of California

licenses to many of Defendants' other patents that are irrelevant to Funai's products or are invalid. *Id.* ¶¶ 66-68, 86-88.

On March 12, 2012, Defendants LSI and Agere filed a complaint before the United States International Trade Commission ("ITC Action") against a number of respondents, including Funai, asserting infringement of the '958, '867, and '663 patents and one other patent, the '087 patent. FAC ¶ 99 and Exh. 5. Defendants sought to exclude the respondents' allegedly infringing products from entry into the United States. *Id.* On the same date that they filed the ITC action, Defendants filed suit against Funai in the United States District Court for the Central District of California ("District Court Action"), asserting infringement of the same four patents at issue in the ITC action. *Id.* ¶ 98 and Exh. 4. The parties stipulated to stay the District Court Action pending resolution of the ITC Action. *Id.* ¶ 100.

In July 2013, the Administrative Law Judge ("ALJ") presiding over the ITC Action determined that Funai did not infringe any asserted claims of the '958, '867, or '663 patents. FAC ¶ 101. In January 2014, while the ALJ's determination was on appeal, Funai and LSI entered into a license and settlement agreement under which they released each other from claims of liability relating to the '087 and '663 patents as of the execution date of the license and settlement agreement. *Id.* ¶ 102. LSI also granted Funai a license to the '087 and '663 patents through September 30, 2015. *Id.* Based on the license and settlement agreement, the district court dismissed with prejudice all claims relating to the '087 and '663 patents. *Id.* In March 2014, the full ITC affirmed the ALJ's findings of non-infringement regarding the '958 and '867 patents and also found the claims of the '958 patent to be invalid. *Id.* ¶ 103. In March 2015, the Federal Circuit upheld the ITC's finding of no violation based on lack of domestic industry and declined to reach other liability issues. *Id.* ¶ 104.

In June 2015, Defendants filed a first amended complaint in the District Court Action to (1) add Avago as a plaintiff, (2) add infringement allegations regarding another patent, and (3) add counts for "Declaratory Judgment for Future Infringement" regarding the '087 and '663 patents that previously had been dismissed from the case. FAC ¶ 105. Later the same month, Defendants filed a second amended complaint in the District Court Action. *Id.* ¶ 106. In September 2015, the

1   District Court Action was transferred to the Northern District of California, and in October 2015

2   Defendants filed a third amended complaint alleging actual infringement of the '663 patent.  *Id.* ¶

3   108.  In December 2015, Defendants filed a fourth amended complaint again alleging

4   infringement of the '663 patent.  *Id.* ¶ 109.  In February 2016, Defendants voluntarily dismissed

5   the District Court Action without explanation.  *Id.* ¶ 110.  Defendants still refuse to offer Funai

6   licenses to the '958, '867, and '663 patents on FRAND terms.[3]

7        Funai filed this action on March 11, 2016, and it filed the FAC as of right on August 29,

8   2016.  The FAC asserts claims for:  (1) violation of Section 2 of the Sherman Act; (2) violation of

9   California's Unfair Competition Law ("UCL"); (3) breach of contract based on IEEE FRAND

10  obligations; (4) breach of contract based on ITU FRAND obligations; (5) breach of contract based

11  on licensing agreement with MPEG LA; (6) promissory estoppel; (7) declaratory judgment for

12  determination of FRAND rate and order requiring Defendants to offer FRAND license or

13  declaring Defendants' patents to be unenforceable against Funai; (8) declaratory judgment of non-

14  infringement of the '148 patent; and (9) declaratory judgment of non-infringement of the '087

15  patent.

16       Defendants move to dismiss Claims 1, 2, 4, 5, 6, and 7 in whole or in part.

17  **II.    LEGAL STANDARD**

18       "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

19  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

20  *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

21  729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

22  as true all well-pled factual allegations and construes them in the light most favorable to the

23  plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the

24  Court need not "accept as true allegations that contradict matters properly subject to judicial

25  notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

26  unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

27

28  [3] As noted above, Funai's license to the '663 patent expired in September 2015.  FAC 102.

United States District Court
Northern District of California

(internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

### A.    Claim 1 for Violation of Section 2 of the Sherman Act

Claim 1 asserts monopolization in violation of Section 2 of the Sherman Act.    Defendants contend that Funai's Section 2 claim is barred by the *Noerr-Pennington* doctrine and that Funai has failed to plead an essential element of the claim, causal antitrust injury.

#### 1.    *Noerr-Pennington*

"The *Noerr-Pennington* doctrine allows private citizens to exercise their First Amendment rights to petition the government without fear of antitrust liability."  *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1044 (9th Cir. 2009).[4]  "Those who petition government for redress are generally immune from antitrust liability."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"), 508 U.S. 49, 56 (1993).

The Supreme Court has recognized two exceptions to *Noerr-Pennington:*  the "sham" exception and the *"Walker-Process"* exception.  The 'sham' exception applies when the governmental process is used "as an anticompetitive weapon."  *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991).  "A sham situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all."  *Id.* (internal quotation marks and citation omitted).  The *Walker-Process* exception applies when an entity obtains a patent fraudulently and then uses that patent to exclude a competitor from the market through infringement litigation.  *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965).

---

[4] The doctrine takes its name from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ("*Noerr*"), and *Mine Workers v. Pennington*, 381 U.S. 657 (1965) ("*Pennington*").

United States District Court
Northern District of California

Defendants assert that "[t]he bulk of the allegedly illegal conduct of which Funai complains consists of a federal court case and an ITC action brought by LSI and Agere to protect their patents." Defs.' Mot at 8-9, ECF 48. Because that conduct clearly was petitioning activity, Defendants contend that *Noerr-Pennington* bars Funai's antitrust claim unless Funai can show that the ITC Action and District Court Action were sham litigation.[5] Defendants argue that Funai cannot make that showing.

Defendants mischaracterize Funai's antitrust claim. The crux of the claim is Funai's assertion that Defendants lied to the IEEE and ITU in order to induce those SSOs to incorporate Defendants' technologies into the 802.11 standard for wireless Internet connectivity and the H.264 standard for video compression. FAC ¶¶ 126-131. Specifically, Funai alleges that Defendants represented that if their technologies were incorporated into the standards, Defendants would license their standard essential patents on FRAND terms. *Id.* Funai contends that Defendants had no intention of meeting that commitment. *Id.* To the contrary, Funai claims, Defendants' technologies were incorporated into the 802.11 and H.264 standards, but Defendants have refused to offer Funai licenses to its asserted standard essential patents on FRAND terms. *Id.* ¶¶ 131, 136. Funai summarizes Defendants' alleged scheme to monopolize as follows: "Defendants' objective during the IEEE's and ITU's consideration of the relevant input technologies was first to cause those technologies to be standardized through their advocacy for their adoption and simultaneous deceit, and then to take advantage of the lock-in effect by demanding exorbitant royalties or other license terms that were unfair, unreasonable, and/or discriminatory, which objective was flatly inconsistent with their prior explicit FRAND undertaking to the IEEE and ITU." *Id.* ¶ 126.

Those allegations, separate and apart from Funai's allegations regarding the ITC Action and District Court Action, are sufficient to give rise to a Section 2 claim. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) ("We hold that (1) in a consensus-oriented private standard-setting environment, (2) a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, (3) coupled with an SDO's reliance on that

---

[5] There is no suggestion in the record that Defendants obtained their patents by fraud and thus no suggestion that the *Walker-Process* exception might apply.

1  promise when including the technology in a standard, and (4) the patent holder's subsequent

2  breach of that promise, is actionable anticompetitive conduct."); *Microsoft Mobile Inc. v.*

3  *Interdigital, Inc.*, No. CV 15-723-RGA, 2016 WL 1464545, at *2 (D. Del. Apr. 13, 2016)

4  (denying motion to dismiss Section 2 claim based on allegations that defendant made intentionally

5  false FRAND commitments to induce SSO to adopt defendant's technology and then refused to

6  comply with FRAND licensing obligations); *Apple Inc. v. Samsung Elecs. Co.* ("*Apple*"), No. 11-

7  CV-01846-LHK, 2011 WL 4948567, at *4 (N.D. Cal. Oct. 18, 2011) ("Courts have recognized

8  that fraudulent FRAND declarations that are used to induce SSOs to adopt standards essential

9  patents can be monopoly conduct for the purposes of establishing a Section 2 claim.").

10  Funai does allege that "[a]s part of their overall anticompetitive scheme and in an attempt

11  to effectuate the hold-up power that Defendants enjoy as a result of their concealment of their true

12  intention not to offer FRAND terms to all those implementing the standards – despite their prior

13  written commitment to the contrary – Defendants filed the ITC Action and the District Court

14  Action."  FAC ¶ 137.  Funai argues that because Defendants' conduct in bringing the ITC Action

15  and District Court Action was part of a larger anticompetitive scheme, that conduct may be

16  considered when evaluating its Section 2 claim without running afoul of *Noerr,* regardless of

17  whether the conduct falls within the sham exception.

18  Neither the Supreme Court nor the Federal Circuit has spoken on this precise issue.[6]

19  However, the issue was addressed by another court in this district in *Hynix Semiconductor Inc. v.*

20  *Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007).  After conducting an exhaustive survey of

21  relevant authority, the *Hynix* court concluded that "the Federal Circuit and the Supreme Court

22  would recognize some 'scheme' antitrust allegations that include constitutionally protected

23  litigation within the 'overall course of conduct,' but only those in which the patent litigation is

24  'causally connected' to anticompetitive harms."  *Id.* at 1096-97.  The *Hynix* court went on to state

25  as follows:

---

27  [6] "[W]hether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its
immunity from the antitrust laws is to be decided as a question of Federal Circuit law."

28  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).  This applies
"to all antitrust claims premised on the bringing of a patent infringement suit."  *Id.*

United States District Court
Northern District of California

1
2
3
4

> The court concludes that before otherwise protected litigation can be a part of an "anticompetitive scheme" claim, the court must first find that the other aspects of the scheme independently produce anticompetitive harms. Once this step has been established, the court should ask whether the accused patent litigation was causally connected to these anticompetitive harms. If yes, an antitrust plaintiff may then include good faith patent litigation as part of the anticompetitive scheme.

5

*Id.* at 1097. The court reasoned that, "where the patent litigation is used to further the harm

6

caused under a 'more traditional antitrust theory,' a plaintiff should be allowed a full recovery."

7

*Id.*

8

     *Hynix* has been followed by some courts and disavowed by others. *See, e.g., Microsoft*

9

*Mobile*, 2016 WL 1464545, at \*3 (following *Hynix*); *Zenith Elecs., LLC v. Sceptre, Inc.*, No. LA

10

CV14-05150 JAK (AJWx), 2015 WL 12765633, at \*6 n.2 (C.D. Cal. Feb. 5, 2015)  (following

11

*Hynix*); *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, No. 5:03-00887-MRP (PLA), 2009 WL

12

8727693, at \*8 n.7 (C.D. Cal. Feb. 17, 2009) (disapproving *Hynix*).  This Court is persuaded by

13

the reasoning of *Hynix* and will join those courts which have followed it.

14

     At the first step of the *Hynix* inquiry, this Court finds that Funai adequately has alleged that

15

non-petitioning aspects of Defendants' alleged scheme – specifically, the false FRAND

16

commitments – independently have caused Funai anticompetitive harm.  Funai alleges that

17

Defendants' refusal to license its technologies on FRAND terms impairs Funai's ability to

18

compete in the markets for 802.11-compliant and H.264-compliant products and harms consumers

19

of such products because they will pay increased prices when unreasonably high royalties are

20

passed on downstream.  FAC ¶¶ 146-153.  At step 2 of the *Hynix* analysis, the Court finds that the

21

ITC Action and District Court Action were causally connected to these harms, as those actions

22

were mechanisms to maintain the monopolies obtained by Defendants' misconduct before the

23

SSOs and to effectuate Defendants' "hold-up power" to demand supracompetitive royalties.  *Id.* ¶

24

137.  The ITC Action and District Court action also increased Funai's costs of competing in the

25

markets for 802.11-compliant and H.264-compliant products, as those actions required Funai to

26

expend significant resources to defend those actions.  *Id.* ¶ 150.  Consequently, the Court will

27

consider the ITC Action and District Court Action as part of Defendants' alleged anticompetitive

28

scheme.

United States District Court
Northern District of California

1    Defendants' motion to dismiss Claim 1 as barred by *Noerr-Pennington* is DENIED.

2           **2.     Antitrust Injury**

3    "There are three essential elements to a successful claim of Section 2 monopolization: (a)

4    the possession of monopoly power in the relevant market; (b) the willful acquisition or

5    maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v.*

6    *Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010) (internal quotation marks and

7    citation omitted).  Defendants assert that Funai has not pled the last element, causal antitrust

8    injury.

9           In order to satisfy this element, Funai must allege facts showing that Defendants' conduct

10   caused it to suffer injuries "of the type the antitrust laws were intended to prevent and that flows

11   from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,

12   429 U.S. 477, 489 (1977).  "The antitrust laws . . . were enacted for the protection of competition

13   not competitors."  *Id.* at 488 (internal quotation marks and citation omitted).  "Injury that flows

14   from aspects of a defendant's conduct that are beneficial or neutral to competition is not 'antitrust

15   injury.'"  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

16   "Where the defendant's conduct harms the plaintiff without adversely affecting competition

17   generally, there is no antitrust injury."  *Id.*

18          Funai alleges injury to both itself and consumers resulting from Defendants' unlawful

19   monopolization of the "Input Technology Markets," which Funai defines as "congruent with each

20   of the allegedly essential patents – the '867 patent, the '958 patent, and the '663 patent,

21   respectively."  FAC ¶ 114.  In an antitrust suit based upon allegations that a SSO adopted a

22   standard incorporating the defendant's technologies, thus eliminating substitute or alternative

23   technologies, the relevant market may be defined as "congruent with the scope of" the defendant's

24   patents.  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007).  Funai alleges that

25   Defendants' monopolization of the Input Technology Markets has caused Funai to suffer

26   anticompetitive injury in that reasonable substitutes for Defendants' technologies have been

27   excluded, Defendants have refused to license its technologies to Funai on FRAND terms, and

28   Defendants have forced Funai to expend significant resources, including attorneys' fees and other

11

expenses, in defending the ITC Action and District Court Action.  FAC ¶¶ 146-53.

Funai alleges that in addition these harms particular to Funai, Defendants' conduct has harmed competition more broadly:  "Defendants' wrongful conduct has brought about and continues to threaten to bring about a significant threat of injury for downstream price, quality, and innovation competition for devices that connect wirelessly to the Internet, or third party products that decompress digital video streams, thereby causing injury to consumers across the United States and elsewhere."  FAC ¶ 152.  Funai adds that, "[t]hese threatened injuries include the inevitable passing on to consumers of improper royalties demanded by Defendants and decreases in innovation and quality competition for end products that comply with the 802.11 and H.264 standards."  *Id.*  According to Funai, "Defendants' abusive conduct has and continues to threatens [sic] to dampen innovation for products that comply with the 802.11 and H.264 standards by eliminating manufacturers' ability to invest in and bring to market innovative products with confidence that holders of claimed essential patents will not seek to enjoin their products or demand exorbitant, non-FRAND licensing terms."  *Id.*

A court in this district deemed similar allegations to be sufficient in *Apple*.  In that case, Apple alleged in its reply counterclaims that:  "Samsung's conduct more broadly has and continues to threaten unlawfully to exclude rivals from and increase royalties and other costs associated with the manufacture and sale of downstream wireless communications devices that implement the UMTS standard and chill competition to develop and sell innovative new UMTS-compliant products, resulting in increased prices and decreased quality and innovation in downstream product markets and complementary innovation markets."  *Apple*, 2011 WL 4948567, at *4.[7]

At the hearing, Defendants' counsel asserted disagreement with the analysis of *Apple*, and suggested that Funai must identify another entity that has been denied a license on FRAND terms or otherwise harmed by Defendants' conduct.  Counsel did not cite, and the Court has not

_____

[7] This Court takes judicial notice of its own docket to consider Apple's reply counterclaims to determine whether they contained more factual specificity than the district court's summary.  *See Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-01846-LHK, ECF 124.  They did not.

United States District Court
Northern District of California

discovered, any case holding that level of specificity to be required at the pleading stage.  To the contrary, the most closely analogous cases reviewed by the Court found no fault with allegations similar to those in this case and in *Apple*.  *See, e.g., Microsoft Mobile*, 2016 WL 1464545, at *3; *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793-96 (N.D. Tex. 2008).  Moreover, the Court notes that Funai has identified another entity that has been harmed by Defendants' conduct, as Funai alleges that Defendants refused to extend Funai's WiFi chip manufacturer, Realtek Semiconductor Corporation, licenses on FRAND terms and sued Realtek for injunctive relief both in federal court and before the ITC.  FAC ¶¶ 65, 75.

Defendants' motion to dismiss Claim 1 for failure to allege causal antitrust injury is DENIED.

### B.      Claim 2 for Violation of California's UCL

Claim 2 asserts that Defendants' anticompetitive conduct also violates California's UCL. California Business & Professions Code § 17200 prohibits an individual or entity from engaging in an "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks and citation omitted).  Defendants argue that because Funai's UCL claim is based upon Defendants' alleged anticompetitive conduct, the UCL claim should be dismissed for the same reasons as the Sherman Act claim.  As discussed above, Defendants have failed to demonstrate that the Sherman Act claim is subject to dismissal.

Accordingly, Defendants' motion to dismiss Claim 2 is DENIED.

### C.      Claims 1, 2, 4, 5, and 6 as Related to '663 Patent

Defendants ask the Court to dismiss without leave to amend "[a]ll counts of the Complaint related to the '663 patent that related to conduct by [Defendants] prior to October 1, 2015" on the basis that Funai expressly released such claims when parties entered into a license and settlement agreement in January 2014.  Defs.' Mot. at 12, ECF 48.  Defendants' request encompasses Claim 1 (Sherman Act), Claim 2 (UCL), Claim 4 (breach of contract based on ITU FRAND obligations),

United States District Court
Northern District of California

and Claim 6 (promissory estoppel).  *Id.*

Funai does not dispute, and in fact it expressly alleges, that it entered into a license and settlement agreement with LSI in January 2014.  FAC ¶ 102.  Funai does not attach a copy of the agreement to its FAC, but Defendants have submitted excerpts of the agreement, Exh. C to Bell Decl., ECF 48-4, which the Court considers under the incorporation by reference doctrine, *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint). Under the terms of the agreement, the parties released each other from all claims of liability related to the '663 patent and the '087 patent (not at issue in this lawsuit) "as of the EXECUTION DATE" of the agreement, and LSI granted Funai a license to the two patents through September 30, 2015.  FAC ¶ 102; Agreement ¶ 2.01(a), Exh. C to Bell Decl.  The agreement was executed on January 6, 2014.[8]  Agreement, Exh. C to Bell Decl.  Accordingly, while Funai may not – and does not attempt to – assert claims based on the '663 patent arising from conduct prior to January 6, 2014, nothing in the agreement precludes Funai from asserting claims arising after that date.

Defendants argue in their motion brief that Funai has no conceivable basis for asserting claims based on the '663 patent prior to the license's expiration on September 30, 2015.  However, as Funai points out in its opposition, the FAC alleges expressly that on June 2, 2015 – during the pendency of the license – Defendants amended their pleading in the District Court Action to add counts for "Declaratory Judgment[s] for Future Infringement" of the '663 patent and the '087 patent.  FAC ¶ 105.  Faced with that allegation, Defendants in their reply request that the Court dismiss all claims based on the '663 patent for conduct occurring during the period between January 2014 and June 2, 2015.

The Court declines to do so.  Funai's allegations make clear, and Funai has confirmed in its briefing, that it is not asserting any claims based on the '663 patent arising prior to the execution date of the settlement agreement on January 6, 2014.  Defendants have provided no

---

[8] While the signature page of the agreement reflects and execution date of January 6, 2014, the FAC alleges and execution date of January 3, 2014.  For purposes of this motion, the Court uses the January 6 date.

United States District Court
Northern District of California

1   basis for dismissing claims based on the '663 patent arising after that date.  Defendants appear to

2   be asking the Court to excise time periods as to which Funai has not alleged specific

3   anticompetitive conduct.  Defendants have not cited, and the Court has not discovered, any

4   authority for carving up Funai's claims in such a manner.  Funai need not allege anticompetitive

5   conduct for every date throughout the course of the alleged scheme.

6        Defendants' motion to dismiss portions of claims based on the '663 patent is DENIED.

7        **D.**     **Claim 5 for Breach of Contract Based on MPEG LA License Agreement**

8        Claim 5 asserts that when Defendants took a license to the MPEG LA AVC/H.264 patent

9   pool, also referred to in the FAC as the AVC Patent Portfolio License, they became contractually

10  obligated to license their standard essential patents to other licensees to the pool.  FAC ¶¶ 55, 180.

11  As discussed above, when an entity takes a license to a patent pool administered by MPEG LA,

12  such entity is contractually obligated to grant reciprocal licenses to its own asserted standard

13  essential patents by either (1) directly granting such licenses to other licensees to the patent pool or

14  (2) joining the patent pool as a licensor.  *Id.* ¶ 57.  A licensee who grants such a reciprocal license

15  either directly or by joining the patent pool receives the same per-patent rate that other licensors

16  receive.  *Id.*  Funai alleges that LSI was a licensee to the AVC Patent Portfolio License as early as

17  October 2009 and as recently as December 2015.  *Id.* ¶ 58.  Funai also was a licensee to the AVC

18  Patent Portfolio license and therefore was a third party beneficiary to Defendants' contractual

19  agreement with MPEG LA.  *Id.* ¶ 180.  Funai claims that Defendants breached their contractual

20  obligation by "filing and maintaining the amended complaints in the District Court Action, prior to

21  offering Funai licenses to the '663 patent at a rate consistent with their obligations to MPEG LA."

22  *Id.* ¶ 181.

23       Defendants assert that Claim 5 is defective because LSI, in its role as *licensor* to the patent

24  pool, did not include the '663 patent in the patent pool during the relevant time frame.  That

25  argument is beside the point, as Funai alleges that Defendants' contractual obligation arises from

26  LSI's role as a *licensee* to the patent pool.

27       With respect to Funai's claim of liability based upon LSI's role as a licensee, Defendants

28  argue that Funai's allegations are insufficient because LSI was obligated to license only standard

United States District Court
Northern District of California

15

United States District Court
Northern District of California

essential patents and Funai has not alleged facts showing that LSI asserted that the '663 patent was standard essential.  In opposition, Funai points to its allegation that:  "Defendant LSI's allegations in the ITC Action and District Court Action demonstrates that it believes that the claims of the '663 patent are 'necessarily infringed in connection with the use or implementation of the AVC Standard' such that the '663 patent, which issued from the USPTO on January 3, 2006 and was owned by Defendant LSI when it entered the MPEG LA license, was covered by the license grant contained in Defendant LSI's agreement with MPEG LA."  FAC ¶ 59.  In reply, Defendants do not argue that the '663 patent is *not* standard essential.  Instead, they argue that they did not admit in either the ITC Action or the District Court Action that the '663 patent is standard essential, and that Funai has not alleged facts showing that such an admission was made.  Whether Defendants did or did not take the position that the '663 patent is standard essential in prior litigation is a question of fact.  The Court concludes that for pleading purposes, Funai adequately has alleged that Defendants did take such a position.

Defendants' motion to dismiss Claim 5 is DENIED.

**E.      Claim 6 for Promissory Estoppel**

Claim 6 asserts that Defendants promised the IEEE and the ITU that they would license standard essential patents on FRAND terms, and that Fuani relied on those promises in developing and marketing its products.  FAC ¶¶ 186-89.  Funai alleges that "Defendants are estopped from reneging on [their] promises to IEEE and ITU, its members, designers, and sellers of products implementing the 802.11 and H.264 standards, under the doctrine of promissory estoppel."  *Id.* ¶ 190.

Defendants seek dismissal of Claim 6 as precluded by Funai's claims for breach of contract based on Defendants' agreements with the IEEE and the ITU.  "Promissory estoppel is a doctrine that operates as a substitute for consideration where a contract fails."  *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1162 (C.D. Cal. 2009).  A plaintiff may not state a claim for promissory estoppel where a valid contract, supported by consideration, governs the same subject matter as the alleged promise.  *Id.*  In opposition, Funai argues that it properly may argue promissory estoppel as an alternative to its contract claims where it has not yet been established

1    that valid contacts exist between Defendants and the SSOs and that Funai is a third party

2    beneficiary with respect to those contracts.  At the hearing, Defendants' counsel represented that

3    Defendants do not contest the existence of the contracts in question or Funai's status as a third

4    party beneficiary.

5        Based on the representation of Defendants' counsel at the hearing, Defendants' motion to

6    dismiss Claim 6 is GRANTED without prejudice to renewal if Defendants later take a different

7    position regarding the contracts in question.

8        **F.    Claim 7 for Declaratory Judgment**

9        Claim 7 seeks a declaratory judgment:  (a) establishing that Defendants have not offered to

10   license the '867, '958, and '663 patents to Funai on FRAND terms; (b) setting forth FRAND

11   terms, including the applicable royalty rate; and (c) establishing that if Defendants refuse to offer

12   licenses on FRAND terms, Defendants' allegedly essential patents – including the '867, '958, and

13   '663 patents – are unenforceable against Funai and its customers.  Defendants seek dismissal of

14   this claim as unripe and duplicative.

15       The standard for determining the ripeness of a claim for declaratory judgment is "whether

16   there is a substantial controversy, between parties having adverse legal interests, of sufficient

17   immediacy and reality to warrant the issuance of a declaratory judgment."  *Principal Life Ins. Co.*

18   *v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (internal quotation marks and citation omitted).

19   Defendants contend that Funai has failed to identify a pending lawsuit or threat of litigation

20   sufficient to establish a controversy between the parties of sufficient immediacy to warrant

21   declaratory judgment.  Funai points to its allegations that after litigating against it for years,

22   Defendants dismissed the District Court Action without explanation and without prejudice.  FAC

23   ¶ 110.  Funai also alleges that Defendants to this day have not offered to license the '867, '958 and

24   '663 patents to Funai on FRAND terms.  *Id.*  These allegations are sufficient to establish a

25   controversy of sufficient immediacy to support Funai's claim for declaratory judgment.

26       Defendants alternatively ask the Court to strike Claim 7 as duplicative of Funai's Claims

27   3-5 for breach of contract.  Funai argues that while there is significant overlap between the claims,

28   the remedies sought under the claim for declaratory judgment are not identical to the remedies

United States District Court
Northern District of California

17

sought under the contract claim.  For example, Funai asserts, to obtain relief under the declaratory judgment claim, Funai would not necessarily need to prove contract damages.  "Courts may choose not to permit a claim for declaratory relief when resolution of other claims would sufficiently resolve the controversy."  *Kho v. Wells Fargo & Co.*, No. SACV 12-0847 DOC, 2012 WL 3240041, at *9 (C.D. Cal. Aug. 6, 2012).  It is not clear that all of the relief sought under Claim 7 is available to Funai under its contract claims.  Accordingly, at this state of the proceedings the Court declines to dismiss Claim 7 as duplicative.

Defendants' motion to dismiss Claim 7 is DENIED.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)   Defendants' motion to dismiss is GRANTED WITHOUT PREJUDICE as to Claim 6 for the reasons set forth herein;

(2)   Defendants' motion to dismiss otherwise is DENIED;

(3)   Defendants shall answer the FAC; and

(4)   A Case Management Conference is set for April 6, 2017 at 11:00 a.m. to discuss the case schedule in light of the Court's ruling on Defendants' motion.  Counsel may appear at the Case Management Conference telephonically.

Dated:  March 27, 2017

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

18